IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Michael Collins, on behalf of himself and all other persons similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | No.  16 cv 3814 |
| THE VILLAGE OF PALATINE, ILLINOIS a municipal corporation | ) ) ) | |
| Defendant. | ) | **JURY DEMANDED** |

COMPLAINT-CLASS ACTION
FOR DAMAGES AND OTHER RELIEF UNDER THE
DRIVER'S PRIVACY PROTECTION ACT

This is a successor class action complaint to 10 cv 5434 (*Senne v Village of Palatine, Ill*.) and 15 cv 9800 (*Murphy v. Village of Palatine, Ill.*).

This is a class action pursuant to the Driver Privacy Protection Act, 18 U.S.C. §2721 *et seq.* (the "DPPA"). Plaintiff brings this action on his behalf and behalf of all similarly situated individuals whose "personal information" is contained in any "motor vehicle record" which has been obtained, and disclosed by The Village of Palatine, within the meaning of the DPPA, 18 U.S.C. §2725(1) and (3), who have not provided "express consent," within the meaning of the DPPA, 18 U.S.C. §2725(5) for the distribution of their "personal information" for purposes not enumerated by the DPPA, 18 U.S.C. §2721(b), and whose "personal information" has been knowingly "obtain[ed]," "used, or disclosed" by the Defendant within the meaning of the DPPA, 18 U.S.C. §2724.

Now Comes Plaintiff Michael Collins ("Plaintiff") on behalf of himself and all other persons similarly situated, and for his Complaint against Defendant Village of Palatine, Illinois ("Palatine") alleges as follows:

## THE PARTIES

1. Plaintiff is a citizen and resident of the Village of Long Grove, Lake County, Illinois.

2. The putative class consists of persons whose personal information was disclosed on parking citations issued within the Village of Palatine.

3. Defendant Palatine is a municipal corporation located within the County of Cook and State of Illinois and within the Northern District of Illinois Eastern Division.

## JURISDICTION AND VENUE

4. This is a civil action alleging violation of the Driver's Privacy Protection Act, 18 U.S.C. §2721 *et. seq.*.

5. This Court has original subject matter jurisdiction over this action pursuant to 18 U.S.C. §2724(a) and 28 U.S.C §1331.

6. This Court has personal jurisdiction over Palatine because it is a municipal corporation located within the County of Cook and State of Illinois.

7. Venue is proper in this district under 28 U.S.C. §1391(b) and (c).

## THE DPPA

8. The DPPA was included as part of omnibus crime legislation passed by Congress, known as the Violent Crime Control and Law Enforcement Act of 1993. Senator Boxer, one of the DPPA's Senate sponsors, described several well-publicized incidents in which criminals had used publicly available motor vehicle records to identify and stalk their victims. Those incidents included:

      a.      the murder of actress Rebecca Schaeffer in California by a man who had obtained Schaeffer's address from California's Department of Motor Vehicles;

      b.      home invasion robberies by a gang of Iowa teenagers who identified their victims by copying the license numbers of expensive automobiles and used those license numbers to obtain the addresses of the vehicle owners from the Iowa Department of Transportation; and

      c.      the Arizona murder of a woman whose home address was identified from the Arizona Department of Motor Vehicles.

Senator Boxer also explained the ease with which a California stalker had obtained the addresses of young women by copying their license numbers and requesting their addresses from the California Department of Motor Vehicles. As Senator Boxer explained, prior to the time of the passage of the DPPA, in "34 States, someone [could] walk into a State Motor Vehicle Department with your license plate number and a few dollars and walk out with your name and home address." Representative Moran, who sponsored the DPPA in the House of Representatives, explained that "very few Americans realize that by registering their car or obtaining a driver's license through the DMV, they are surrendering their personal and private information to anyone who wants to obtain it. When informed that such information can be so easily obtained, most licensees are shocked and angry. According to a survey released by the National Association to Protect Individual Rights, 92 percent of Americans believe that the DMV should not sell or release personal data about them without their knowledge and approval."

      9.      As originally enacted, the DPPA made it unlawful for any person or organization to disclose or obtain personal information derived from any motor vehicle record, unless the subject of the information had authorized such disclosure or the request/disclosure qualified under a

recognized exception, including use by any federal or state agency, use in connection with motor vehicle and driver safety, use in court proceedings, use in certain research activities, use relating to certain insurance matters, and use for verification of personal information submitted by the subject of such information. Use of personal information for marketing activities was permitted, so long as the States had provided individuals identified in motor vehicle records with the opportunity to prohibit such disclosures. This "opt out" provision effectively gave individuals the right to prohibit the States from disclosing personal information for marketing purposes. 18 U.S.C. §2721 (1993).

10. Congress significantly amended the DPPA in 1999 by eliminating the "opt out" provision for marketing activities. Use or obtaining of personal information contained in motor vehicle records for "surveys, marketing or solicitations" is now permitted only "if the State has obtained the express consent of the person to whom such personal information pertains." Similarly, a requester of personal information may obtain such information for any purpose, "if the requester demonstrates it has obtained the express consent of the person to whom such personal information pertains." 18 U.S.C. §2721(b) (13), (14) (1999). By changing the "opt out" exceptions of the 1993 DPPA to "opt in" exceptions in the 1999 DPPA, Congress significantly reduced the categories of persons whose personal information may be lawfully obtained under the Act. See *Reno v. Condon,* 120 S.Ct. 666, 669 (2000) (upholding the constitutionality of the DPPA) (States may no longer "imply consent from a driver's failure to take advantage of a state-afforded opportunity to block disclosure, but must rather obtain a driver's affirmative consent to disclose the driver's personal information" for restricted purposes.). The effective date of the 1999 amendments to the DPPA was June 1, 2000.

## **COMPLAINT**

### **Civil Action under Driver's Privacy Protection Act §2724(a)**

11. On June 14, 2007, Palatine, by and through its authorized officer issued a parking citation, number P2767746 ("the Citation"), to a 2007 Gray Honda, owned by Plaintiff for a "Parking Paybox Violation."

12. Plaintiff had parked his vehicle in the public parking lot at the Palatine Metra Station prior to 8:30 a.m. on June 14, 2007, placed $2.00 into the pay box (apparently into the wrong slot), and boarded the train for Chicago.

13. The Citation was printed electronically on a pre-printed authorized form and placed upon the vehicle's windshield under a wiper blade on the public way and in plain view of the public at or about the date listed above.

14. The Citation remained on the windshield, unattended, on the public way, and in plain view until it was discovered and removed from the windshield after 7:30 p.m. that evening by Plaintiff.

15. The Citation contained the following personal information of Plaintiff: his name, address, driver's license number, date of birth, sex, height and weight.

16. The Citation contains the following information regarding the vehicle: make, year, model, color, vehicle identification number ("VIN"), state license plate number and expiration date.

17. The personal information, including Plaintiff's name, address, state driver's license number, date of birth, height, and weight, printed on the Citation were obtained from Plaintiff's driver's license and vehicle title information, "motor vehicle records," maintained by the Illinois Secretary of State.

18. The Citation notice which is also a return envelope directs the recipients to "mail a check or money order for the amount indicated below in this envelope" containing the personal information of the vehicle's registered owner printed on the outside of the envelope where individuals are advised to disclose their personal information to anyone who comes in contact with the returned citation.

19. The DPPA, prohibits the disclosure of personal information without the express [i.e. "written"] consent of the person to whom such information applies, with the exception of certain circumstances set forth in 18 U.S.C. §2721.

20. None of the exceptions set forth in §2721 of the DPPA apply to the Citation issued by the Village of Palatine. *Id.*

21. By disclosing the personal information of a vehicle's registered owner on the Citation and placing that citation unattended on a vehicle in a public way where it could be viewed and/or removed by anyone passing by, Palatine is not only failing to prevent the commission of a crime, it is facilitating the potential for crime by making the personal information of the vehicle's registered owner available to anyone who would desire the information.

22. The DPPA provides that a person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter

shall be liable to the individual to whom the information pertains, may bring a civil action in a United States district court. 18 U.S.C. §2724(a).

23. Pursuant to the DPPA, a "person" means an individual, organization, or entity, but does not include a State or agency thereof. 18 U.S.C. §2725(2).

24. Accordingly, Palatine meets the definition of a person in that it is an organization or entity which is not a State or agency thereof. *Id.*

25. Pursuant to the DPPA, "personal information" means information that identifies an individual including…driver identification number, name, address (but not the 5-digit zip code)…18 U.S.C. §2725(3).

26. Accordingly, Palatine is knowingly obtaining, disclosing, and using personal information for an unpermitted purpose.

27. Pursuant to the DPPA, "express consent" means consent in writing. 18 U.S.C. §2725(5).

28. Palatine has not obtained the written consent of the Plaintiff whose information it is knowingly obtaining, disclosing or using.

29. Pursuant to the DPPA, a court may award- (1) actual damages, but not less than liquidated damages in the amount of $2,500; (2) punitive damages upon proof of willful or reckless disregard of the law; (3) reasonable attorneys' fees and other litigation costs reasonably incurred; and (4) such other preliminary and equitable relief as the court determines to be appropriate. 18 U.S.C. §2724(b).

## CLASS ACTION ALLEGATIONS

30. For paragraph 30 of the complaint, all allegations made in paragraphs 1 – 29 are incorporated as if more fully stated herein

31. Pursuant to Fed. R. Civ. P. 23(b)(3), Plaintiff brings this action on behalf of himself, and all others similarly situated, as representative of the following class (the "Class"):

> **Each and every individual who received a parking citation left on the windshield of a parked vehicle in the Village of Palatine, Illinois and whose "personal information" was obtained from a "motor vehicle record" and printed on the parking citation including the individuals name, address, driver identification number, race, date of birth, height, weight and/or sex without the express consent of such individuals, from August 28, 2006 through August 30, 2010.**
>
> **Excluded from the class are persons who have authorized Palatine in writing to provide third parties with their "personal information" for any purpose.**

32. Palatine has issued thousands of such tickets and, as such, the class is so numerous that joinder of all members is impracticable,

33. There are questions of law or fact common to the class. The common questions include:

    a. whether Palatine redisclosed "personal information" from the "motor vehicle records" of members of the Class, within the meaning of DPPA, 18 U.S.C. §§ 2721(c), 2725(3), (1);

    b. whether Defendant's obtaining, disclosing, and use of "personal information" from the "motor vehicle records" of members of the Class was done knowingly, within the meaning of the DPPA, 18 U.S.C. §2724(a);

    c. whether Palatine redisclosed personal information from motor vehicle records in a manner not permitted under the DPPA, 18 U.S.C. §§2721(b) (c).

34. Plaintiff can and will fairly and adequately represent and protect the interests of the Class as defined and has no interests that conflict with the interests of the Class. This is so because:

    a. All of the questions of law and fact regarding the liability of the Defendant are common to the class and predominate over any individual issues that may exist, such

that by prevailing on his own claims, Plaintiff will necessarily establish the liability of the Defendant to all class members;

b. Without the representation provided by Plaintiff, it is unlikely that any class members would receive legal representation to obtain the remedies specified by the DPPA;

c. A remedy available under the DPPA is the liquidated sum of $2,500, which Plaintiff intends to seek for all members of the Class; and

d. Plaintiff has retained a competent attorney who is an experienced litigator who is experienced with class actions and familiar with complex litigation matters. Plaintiffs and their counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiffs and their counsel are aware of their fiduciary responsibility to the class members and are determined to diligently discharge those duties to obtain the best possible recovery for the Class.

35. All class members have the same legal rights under the DPPA. Defendant's violations of the DPPA have damaged all of the class members in a similar way. The class action is superior to any other method for remedying Defendant's violations of the DPPA given that common questions of fact and law predominate and the liquidated damage provisions of the DPPA make the remedy available to class members identical. Class treatment is likewise indicated to ensure optimal compensation for the Class and limiting the expense and judicial resources associated with thousands of potential claims.

36. Plaintiff demands trial by jury.

**WHEREFORE**, your Plaintiff respectfully request that this Honorable Court enter judgment on his behalf and on behalf of the other members of the Class and against the Village of Palatine as follows:

(a) declaring that this action may be maintained as a class action;

(b) granting judgment in favor of plaintiff and the other members of the Class against Defendant in the amount of $2,500 for each instance in which Defendant knowingly obtained, disclosed or used personal information from a motor vehicle record in any manner not permitted under the DPPA;

(c) Reasonable attorney fees and other litigation costs reasonably incurred;

(d) An order enjoining Palatine from any future disclosure of personal information on parking violation Citations; and

(e) Such other preliminary and equitable relief as the court deems to be appropriate.

Respectfully submitted:

Michael Collins on behalf of himself and all other persons similarly situated


By:     s/ Martin J. Murphy
               His Attorney

Martin J Murphy
Attorney for Plaintiffs
1222 W. Arthur
Chicago, IL 60626
(312) 933-3200
mjm@law-murphy.com